IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

First Mariner Bank,            *

         Plaintiff
                               *
    v.
                               *    CIVIL NO. MJG-12-1133
The Resolution Law Group,
         et al.                *

         Defendants.           *

    *       *       *       *       *       *       *       *       *       *       *       *       *

MEMORANDUM OPINION

Pending before the Court is a Motion for Sanctions of First Mariner Bank ("First Mariner"). (ECF No. 142). Briefing is complete. For the reasons set forth below, the Court GRANTS in part and DENIES in part the motion.

In his memorandum and order denying defendants' motion to dismiss (ECF No. 60), Judge Garbis summarized the nature of First Mariner's claims and the history of the litigation to date. First Mariner has pled three claims: false advertising in violation of the Lanham Act, defamation and unfair competition – which claims withstood a defense motion to dismiss.

These claims are based on defendant Resolution Law Group's ("RLG") mail advertisements dated April 6, 2012 and May 3, 2012 (and possibly other dates) to certain of First Mariner's Maryland customers stating that it was investigating First

Mariner, suggesting (at a minimum) that First Mariner was engaging in illegal and improper banking practices and indicating that some banks were in settlement negotiations with government agencies.  The advertisements said that the government would seek monetary damages for individuals and reduction in home loans, principal balance and interest rate. The mailed advertisements urged the recipients to contact the RLG promptly.

First Mariner maintains that RLG is operating a mass joinder mortgage reduction scam, similar to scams condemned in other jurisdictions.  First Mariner argues that the advertisements are untrue, seek to scare recipients into engaging the RLG (and paying a retainer), which firm does not have any basis to file any bona fide lawsuit against First Mariner – all to the considerable detriment of First Mariner's business and goodwill.

It is against the backdrop of these claims and factual assertions, that First Mariner sought discovery from the defendants, serving its first discovery on defendants on December 11, 2012.  Dissatisfied with defendants' response to its interrogatories and requests for production of documents, on March 13, 2013, First Mariner filed a motion to compel discovery (ECF No. 73-1).  After a hearing, by letter memorandum and order dated April 19, 2013, the Court agreed with First Mariner,

finding the answers to interrogatories to be totally

unresponsive and largely boilerplate, and granted the motion

ordering defendants to fully answer interrogatories nos. 4 (all

employees ), 7 (cost of advertisement mailings), 8 (selection of

recipients of the mailed advertisements), 10 (persons involved

in creation, maintenance, funding and domain registration), 11

(list and information regarding persons answering calls from

recipients of mailed advertisements) and 14 (recordings and

transcriptions of calls). The Court warned that "[f]ailure to

[completely answer the interrogatories] will subject defendants

to additional sanctions."  (ECF No. 87).

Similarly, the Court found the defendants' response to the

requests for production of documents unresponsive and largely

boilerplate, noted the failure to produce <u>any</u> documents with the

response and ordered defendants to produce all documents sought

in request nos. 1, 4, 5, and 6 (all advertisements including

blanks and drafts), 7 and 8(contracts including with Marketing

Smart and Register.com), 10 and 11 (scripts, training materials,

including subject of fee amount).  And, the Court warned that

"[f]ailure to produce all documents will subject defendants to

additional sanctions."  (<u>Id</u>.)

As to one category of requested documents – disseminated

advertisements or drafts of same – the Court required an

affidavit from Mr. Ian Berger "attaching all advertisements,

explaining and attesting to the fact that these represent the universe of advertisements and drafts [and "blank" drafts]." (Id.)

In the same letter memorandum and order, the Court ordered production of "a complete list of recipients of defendants' advertisements" (under cover of Berger's affidavit), a list of RLG employees to date and a "viable address" for defendants' marketing firm (again under cover of Berger's affidavit) and further ordered that Mr. Berger should state in his affidavit that he "has attempted to obtain a current, valid address [for the marketing firm] and list those attempts." (Id.)

Finding no substantive justification for defendants' discovery failures, the Court awarded expenses to First Mariner. (Id.)

By letter motion dated May 2, 2013 (ECF No. 91), First Mariner complained that defendants had failed to comply with the April 19, 2012 order. The Court held a hearing on May 21 and agreed that defendants had failed to comply in significant ways, as delineated in the telephone hearing and ordered that defendants file by June 5, 2013 supplemental answers to interrogatory nos. 4 (all employees), 7 (cost of advertisement mailings), 8 (selection of recipients of mailed advertisements), 10 (persons involved in creation, maintenance, funding and domain registration), 11 (list and information regarding persons

answering calls from recipients of mailed advertisements), 14 (recordings and transcriptions of calls); supplemental responses to request nos. 5 and 6 (all advertisements including blanks and drafts), 7 (contracts including with Marketing Smart and Register.com), 10 (scripts, training materials, including subject of fee amount); and supplementation of the Berger affidavit, paragraph nos. 3 (failure to attach all Advertisements, including blanks and drafts, with attestation that those attached are the universe of advertisements), 7 (failure to give specifics of effort to identify valid address for Marketing Smart) and 8 (failure to obtain lists of recipients from Marketing Smart). (ECF No. 105). Further, the Court ordered that these supplemental answers and responses must be signed by <u>both</u> Mr. Kirk and Mr. Calhoun as counsel and both Mr. Berger and Mr. Broderick as representatives of RLG and that the supplemental affidavit be signed by both Mr. Berger and Mr. Broderick.

By letter dated June 6, 2013, First Mariner advised the Court that defendants had failed to comply with the May 22 order. By letter order dated June 13, 2013 (ECF No. 121), the Court asked plaintiff's counsel to specifically identify remaining discovery deficiencies and instructed defendants' counsel "to carefully review my past letter orders and the plaintiff's counsel's complaint regarding lack of compliance

[and warned that] [c]ontinued failure to respond completely may result in additional sanctions, up to and including entry of default judgment on any claims negatively affected by the failure of discovery." (Id.)

The Court held a hearing on June 24 and found continued failure to satisfactorily answer certain interrogatories, notably interrogatory nos. 4 (all employees), 8 (selection of recipients of mailed advertisements), 10 (internet website consultant), 11 (list and information regarding persons answering calls of recipients of mailed advertisements), 14 (recordings and transcripts of calls); and certain requests for documents nos. 5 and 6 (all drafts of advertisements), 7 (contracts with Marketing Smart, Register.com and other vendors), and 10 (scripts, training materials, etc.); and found continued failure to provide the ordered affidavit statements on the universe of advertisements and drafts, an adequate address for Marketing Smart to allow service of subpoena and lists of recipients, associated with specific advertisements and an attestation that lists are the universe of persons who received advertisements. (A list of recipients was first produced literally during the discovery hearing on June 24).

In its July 3, 2013 letter memorandum and order the Court allowed that the defendants could "still cure the [noted] deficiencies, which may lessen the sanction. However, the Court

has determined to award additional attorney's fees (as set forth by plaintiff's counsel in ECF No. 123 and to which defendant has not responded).  Consideration of any further sanctions awaits briefing." (ECF No. 140).

As directed, First Mariner filed a Motion for Sanctions on July 15, providing authority for the extraordinary relief that its counsel sought in the June 24 hearing.  Specifically, First Mariner seeks an order

- prohibiting defendants from asserting the defense of "absolute privilege"

- prohibiting defendants from asserting the defamatory statements at issue are true

- entering an adverse inference against defendants that they are not legitimately offering legal services, but rather operating what the FTC has called a "Mortgage Reduction scam"

- prohibiting defendants from offering evidence rebutting plaintiff's costs for corrective advertising

- awarding First Mariner its attorney's fees incurred as a result of defendants' failures

The Court shall discuss the nature of defendants' discovery misconduct, the governing law of sanctions and the appropriate relief for that misconduct.

**Attorney's Fees**

The Court grants First Mariner an award of its documented attorney's fees of $20,721.00,[1] as of August 19, 2013 and an additional $2500.00 for the additional work performed thereafter, including preparation of the history (ECF No. 156-1) in response to the Court's request.[2] This total award of $23,221.00 shall be against the defendants and their prior attorneys, Eric T. Kirk, John L. Calhoun and the firm of Kandel and Associates, PA, jointly and severally. It is clear to the Court that counsel did not discharge their responsibilities under the discovery rules. However, it is also clear to the Court that the client defendants were uncooperative. The Court has reviewed plaintiff's statement of attorney's fees, including the hourly rates charged and the description of work performed and finds the requested fees reasonable and necessarily incurred by defendants' obstreperous discovery conduct and failures. Defendants state that "they have cured all deficiencies listed in the July 3 order by their supplemental discovery responses

---

[1] Defendants question including in the award $3610 of time expended in reviewing defendants' discovery as First Mariner counsel would have had to expend this time in the normal course, regardless of any discovery dispute. Defendants do not give the record citation for this time expenditure and the Court does not see any entry. <u>See</u> (ECF No. 142-2). Accordingly, any reduction is denied.

[2] If defendants wish to challenge this amount, they should advise the Court by November 1, and plaintiff's counsel shall be required to submit contemporaneous records for all work after August 19, 2013 by November 15. The Court suspects that plaintiff's actual fees incurred were greater than $2,500.00

served on plaintiff on July 31, 2013" and accordingly, that that compliance, albeit belated, should result in a lesser attorney's fee award. (ECF No. 143, 5). The Court agrees that defendants' July 31, August 19 and September 9, 2013 submissions produced some, new substantive information in response to the December 2012 discovery requests and the Court's repeated orders. That fact does not forgive defendants' prior discovery obfuscation and certainly does not negate plaintiff's expense in getting this belated compliance. Accordingly, defendants' belated submissions provide no basis for a reduction in the $20,721.00 in documented, reasonable attorney's fees, incurred through August 19, 2013, and the additional $2,500.00 in fees incurred to fully frame and present the defendants' non-compliance to the Court.

## Other Sanctions

First Mariner seeks sanctions beyond an award of expenses. The Court agrees that additional sanctions are warranted.

As First Mariner notes, the determination of these additional sanctions involves a calculus of weighing the extent of prejudice and the degree of culpability. Victor Stanley, Inc. v. Creative Pipe, Inc. 269 F.R.D. 497, 533 (D. Md. 2010). The degree of culpability here is great. The extent of prejudice is less clear, and requires greater analysis and consideration.

Courts have broad discretion to impose punitive measures on any party who fails to obey a discovery order.  Fed R. Civ. P. 37(b)(2)(B); Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989); 8B Charles Alan Wright, et al., Federal Practice & Procedure § 2289 (3d ed. 2010).  It is generally recognized that Rule 37 sanctions are intended to: (1) penalize culpable parties; (2) deter others from engaging in similar conduct; (3) compensate the Court and other parties for expense caused, and (4) compel discovery. Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, § 49 (2013)(citing Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1453 (11th Cir. 1985)).  As such, Rule 37 sanctions are both punitive and remedial, and may be used to discourage bad behavior and make the aggrieved party whole.

Courts in the Fourth Circuit must consider four factors in determining what sanctions to impose: (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).  The presence or absence of any one of these factors is generally not decisive: "[t]he harshest of sanctions" may be imposed "when . . . culpability is

minimally present, if there is a considerable showing of prejudice, or, alternatively, the prejudice is minimal but the culpability is great." <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497, 533 (D. Md. 2010). Ultimately, a court must "make whatever disposition is just in the light of the facts of the particular case." <u>Bethesda Softworks LLC v. Interplay Entm't Corp.</u>, No. 09-2357, 2011 U.S. Dist. LEXIS 44397 (D. Md. Apr. 25, 2011)(citations omitted).

Defendants' discovery conduct will be discussed and then each of the four factors will be discussed in turn, in light of defendants' conduct.

First Mariner served the subject written discovery on December 2012. The Court held three hearings on April 10, May 21, and July 3 and specifically identified the deficiencies at each juncture.

The Court warned of sanctions, in addition to an expense award, on numerous occasions both in writing (ECF Nos. 87, 97. 105, 121 and 140) and verbally in hearings.

Small improvements would be made to one discovery request one day; another improvement to another discovery request, another day. Rather than provide complete answers, which would very possibly reveal the stark facts of RLG's operations, the defendants chose to stonewall, obfuscate and finally provided marginally satisfactory answers to the majority of discovery

11

requests. It took six months for defendants to provide <u>any</u> list of recipients of the mailed advertisements, and when finally produced, the lists were not associated with any particular mailing. After several iterations and more coaxing, defendants have produced an answer as to how they selected the targeted recipients – sufficient at least to allow intelligent, focused questioning at depositions.

Defendants' seriatim answers would be comical, if they were not truly defiant of the ordered and essential precepts of discovery and resolution of disputes in our civil justice system. At the Court's request, plaintiff compiled a chronological history of defendants' responses to key interrogatories and requests for production of documents. (ECF No. 156-1). Even with defendants' minor supplementation and correction (ECF No. 159), it is a damning record of defendants' contempt for the rules of procedure and the orders of the Court.

For example, in answer to interrogatory no. 4 ("Identify each person employed by RLG since the date of its incorporation to the present, describe the positions held by each person, and state the commencement and termination dates of each person's employment by RLG")[3], on **January 31**, defendants objected without

---

[3] Plaintiff's interrogatories expressly state that "[w]hen referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not

providing any substantive information; on **March 4**, defendants objected again without providing any substantive information but stating that "RLG experiences significant turnover and employees at a relevant time, may no longer be employed, and that current employees. . . may not have been employed at a relevant time;" on **May 1**, defendants named four people as RLG's "full time" employees without identifying information (but, the interrogatory was not limited to "full time employees"); on **June 6**, defendants again named the same four people, but advised that there were unidentified "independent contractors" who provide services; on **August 2**, defendants identified three new employees (all present employees, with the possible exception of Nancy Torres for whom <u>no</u> dates of employment are given at all).

The initial objections were baseless. Moreover, the various answers are inconsistent, raising serious credibility questions. In their **March 4** answer, defendants raise an excuse for failing to answer that there is "significant employee turnover", but in subsequent answers, defendants failed to identify a single <u>past</u> employee. Given this answer on **March 4**, it seems fair to conclude that defendants either lied in their **March 4** answer that there was significant employee turnover or

a party or present employee of a party, said telephone numbers shall be provided." (ECF No. 158-1, 4).

they are still refusing to identify <u>past</u> employees, in the three further answers.

Similarly, in answer to interrogatory no. 11 ("Identify each person responsible for answering, or who answered, telephone calls responding to the . . . advertisement[s], and describe the educational and professional background of each such person, as well as any training received by each such person in connection with RLG advertisements, client solicitation and marketing, and the lawsuit filed by RLG against, <u>inter</u> <u>alia</u>, Plaintiff as referred to by RLG in its motions to dismiss"), on **January 31**, defendants objected without providing any substantive information; on **March 4**, defendants said that " Steve Wood" was the "employee handling Mr. Callahan's call [a First Mariner caller]" and stated that Mr. Wood was not given any training in client solicitation and marketing but did receive some information and training;[4] on **May 1**, defendants gave two names of persons responsible for answering the telephones, who were said to have received "extensive training from R. Geoffrey Broderick;" on **May 21**, another person was named as answering the phone; on **June 6**, the three previous names were reiterated; on **August 2**, defendants listed twenty-three "independent contractors who performed

_____

[4] While Mr. Wood was identified as an "employee," he was never listed as an employee in answer to interrogatory No. 4, although he was listed later as an independent contractor in another interrogatory answer.

services for RLG (but who are not employees of RLG), primarily the answering of intake calls to RLG." In their **July 31, 2013** submission, defendants did belatedly give some contact information for certain previously listed employees and did list certain independent contractors who answered the telephone (ECF No. 149-1, 7-10). (Notably, the defendants did not provide requested telephone numbers (ECF No. 158-1, 4)).

However, thereafter First Mariner submitted evidence of six other individuals who appear to have been employed or engaged by RLG, but were not listed by defendants. As First Mariner noted, one of these listed employees – Michael Harper has been identified variously as RLG's "Compliance Manager" and "Intake Coordinator" – a key person who would be expected to have much information relevant to RLG's operations. In a sur-reply (ECF No. 154, 4), defendants acknowledged that these six persons were not previously listed but were "either left off by mistake or omitted for legitimate reasons." Given the defendants' prior discovery tactics, the Court appreciates – if not shares – the plaintiff's skepticism that four of these names were omitted by mistake. In any event, the July 31 supplementation was not only late but shown to still be incomplete.

In answer to the crucial interrogatory no. 8 ("Describe the process(es) by and the manner in which you selected recipients of . . . advertisement[s], and describe the means through which

each recipient's mailing address was obtained by you or on your behalf"), on **January 31**, defendants objected without providing any substantive information; on **March 4**, defendants answered "a third party marketing firm was contacted about disseminating a given mail piece to e.g., individuals in a specific geographic area, or other specified criteria, e.g. the response rate or performance of prior similar mailings or mailings to a similar geographic area. The criterion utilized to select the class of recipients was an informed determination as to which class of recipients was likely to generate the most responses;" on **May 1**, defendants said that "the advertisement was mailed to people identified and selected by Marketing Smart. Mailing addresses were obtained by Marketing Smart from public records;" on **June 6**, defendants essentially repeated their March 1 answer; on **August 2**, defendants gave a fuller but not complete answer that RLG identified certain, unnamed "banks" and certain "general geographic areas" and Marketing Smart performed a search of unidentified "public records" to compile a list of persons who had a mortgage loan from one of the banks in the general geographical area. On **September 6, 2013**, the defendants further supplemented their answer to this interrogatory;

> "[c]ertain banks were selected based on public
> accusations or findings of wrongdoing identified
> in the press or other public outlets. There was
> no special formula or source for selection – only
> that a bank's name appeared in public as having

been found, charged or investigated in connection with wrongdoing in the residential mortgage business, including unlawful race-based discrimination. This was how First Mariner was selected – accusations of wrongdoing by First Mariner in connection with residential mortgages appeared in the media, including, but not limited, a 2009 FDIC "Cease and Desist" Order entered against First Mariner with respect to unlawful and discriminatory mortgage practices. (A copy of the FDIC Order has already been produced to Plaintiff). I have no recollection of a specific publication or source in first learning about First Mariner's actions, but it was based on public sources. Further responding, the geographic area for selected recipients was based on the size of the bank and where it primarily did business. If the bank in question was a national bank, then the geographic area would usually be nationwide. If the bank in question was a regional bank, like First Mariner, then the geographic area would usually be the relevant region." (ECF No. 154, 7-8)

With this answer, defendants have now given plaintiff a better idea than from the first _five_ answers. However, while it is still incomplete, it is arguably sufficient to allow intelligent, focused questions on deposition.

On other key aspects of RLG's operations, defendants engaged in the same discovery tomfoolery. Defendants resisted producing the list of the recipients of mailed advertisements, stating on **January 31**, incredibly, that "RLG does not have information regarding intended recipients of the advertisements, and doesn't believe that such information exists" and on **March 4** that "RLG does not believe that third party marketing firm has a listing of intended recipients." However, on **June 24**, literally

in the middle of a discovery hearing, defendants produced a list, but without association with particular mailings.

Similarly, defendants engaged in delay and half measures in responding to the key discovery inquiry as to the production of all advertisements, including blank or draft.

My April 19 order stated that "in order to assure that plaintiff has received all disseminated advertisements or drafts of same, including "blank" drafts, Mr. Ian Berger of RLG, the designated 30(b)(6) deponent, shall submit an affidavit attaching all advertisements, explaining and attesting to the fact that these represent the universe of advertisements and drafts." Instead, Mr. Berger's affidavit simply stated: "I have attached true and correct copies of the various iterations and drafts of the subject mailer. I believe the Court has already been provided with these. To my knowledge, there are no other versions." He did not in fact "attach any such copies of the various iterations and drafts of the subject mailer," nor "explain how these were the universe." Similarly, the Berger/Broderick affidavit submitted on June 6, 2013 still failed to attach all versions of the mailer, though the affidavit attests to their attachment and failed to fully "explain that these represented the universe."

Thus, despite clear Court direction, Messrs. Berger and Broderick gave thin and cryptic statements on the directed

topics.  On the topic of universe of advertisements, including drafts – blank or otherwise Mr. Berger variously responded, but never responded as directed by the Court.

Defendants assert that Mr. Broderick's affidavit on August 19, 2013 ("the 'universe of ads and drafts' in RLG's possession has been produced to Plaintiff") completely responds to plaintiff's discovery and the Court's orders.  The Court disagrees.

My injunction to Mr. Berger was to provide an affidavit statement "attesting to the fact that these [attached] advertisements represent the universe of advertisements and drafts" (ECF No. 87, 2) – not the universe of advertisements and drafts in RLG's possession.  The governing law – referred to in at least one hearing – is that a party has an obligation to produce not only information in its "possession," but also within its control.  Lynn v. Monarch Recovery Management, Inc., 285 F.R.D. 350, 361 (D. Md. 2012).  ("[D]ocuments are considered to be under a party's control when that party has the right, authority or practical ability to obtain the documents from a non-party.")

Defendants' apparent failure to vigorously seek advertisements and drafts not in their possession is especially troublesome as defendants have failed to produce a viable address for Marketing Smart – which company is highly likely to

have advertisements and drafts as it did the mailings.  It
defies common sense in the age of computers that neither RLG nor
Marketing Smart have the advertisements.  Moreover, in the joint
Berger/Broderick affidavit dated June 6, 2013, it is represented
that "Broderick also conferred with staff at Marketing Smart in
order to ascertain whether there were additional iterations and
drafts of the subject mailer." (ECF No. 125-1).  Incredibly,
Mr. Broderick does not report the Marketing Smart staff response
in his affidavit, but states rather unusefully that "[t]o my
knowledge there are no other versions, but it is possible that
others exist." (Id.).  Moreover, defendants' position has been
they only have one address for Marketing Smart – an address that
plaintiff says is not viable for service of a subpoena.  Mr.
Berger said he had "tasked an internet search" to no avail for
further Marketing Smart addresses.  It is astounding that Mr.
Broderick as a customer of Marketing Smart could not obtain a
viable address.  It is more astounding that Mr. Broderick did
not get that viable address in his reported call with staff of
Marketing Smart.

This discovery misconduct counsels imposition of strong
sanctions under the Fourth Circuit's four factor test.  First,
the history of defendants' discovery misconduct overwhelmingly
demonstrates the defendants' bad faith. (Factor 1) Defendants
deny that there is any evidence of "bad faith," stating that

20

"there has never been a question whether defendants raised objections they believed were legitimate." (ECF No. 143,3).  To the contrary, the Court found in ruling on the first motion to compel that "there was no substantive justification for defendants' discovery failures," and awarded fees (ECF No. 87). Thereafter, the Court never indicated, or in any way, credited the bona fides of defendants' continued failure to respond completely to First Mariner's discovery demands. Defendants stonewalled, obfuscated and doled out small bits of responsive information, over six months.

The need for deterrence is great for this type of non-compliance.  (Factor 3) Courts must discourage this modus operandus in the discharge of discovery responsibilities.  The Court and plaintiff's counsel spent – wasted – enormous time coaxing proper responses from defendants – an especially egregious situation in that the defendants are a law firm and a lawyer.

And, as to factor 4, quite obviously, the previous monetary sanction of an award of expenses was ineffective.  The Court made an award of expenses on April 19 as a result of First Mariner's <u>first</u> motion to compel and throughout the remaining period of the discovery dispute repeatedly found deficiencies and repeatedly warned of more severe sanctions if deficiencies remained uncorrected.

The harder question involves the final factor: the nature and extent of prejudice that First Mariner suffered and suffers by defendants' discovery misconduct, and the appropriate relief for that prejudice.[5] First Mariner argues that defendants refused to provide even the most basic information with respect to its denial of operating a scam and its "privilege" and "truth" defenses. (ECF No. 142-1, 4). The Court largely agrees. RLG has resisted providing discovery on its operations, including identifying all its personnel, their credentials and training, scripts and instructions provided to intake personnel and recordings and transcripts of calls to RLG from recipients of mailed advertisements. Notably, defendants still do not appear to have provided names of past employees, having earlier complained of the burdensomeness of this interrogatory, as there was great turnover and large number of employees. Obviously past employees can be critical sources of candid information

---

[5] Rule 37 provides a nonexclusive range of sanctions. The most severe is dismissal or default judgment. Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. S.C. 1995). Slightly lower in the continuum are preclusion orders, recognized as "strong sanctions, although not as drastic as dismissals or defaults."[5] Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, § 49 (2013). As such, courts have set a high bar for parties seeking preclusion. Some decisions have focused on the curative nature of the sanction: recent district court opinions in the Fourth Circuit have declined to grant requests for preclusion absent a strong showing of prejudice. See Bethesda, at *18-19 (D. Md. Apr. 25, 2011)(preclusion "typically requires some strong evidence of prejudice"); Hastings v. OneWest Bank, No. 10-3375, 2013 U.S. Dist. LEXIS 52331 at *10-11 (D. Md. Apr. 11, 2013)(same); see also Life Techs. Corp. v. Biosearch Techs., Inc., No. C-12-00852, 2012 U.S. Dist. LEXIS 63974, 37-38 (N.D. Cal. May 7, 2012)("When a court excludes evidence under Rule 37, the Court should do so only where there is a finding of prejudice to the nonoffending party.").

about operations.  Moreover, while defendant did eventually provide a more complete list of persons who answered the telephone, the defendants did not provide those persons telephone numbers as the interrogatory requested.  See (ECF No. 158-1, 4).  As in the case of past employees, independent contractors – past or present – may be a source of valuable information to plaintiff.  Accordingly, the defendants shall provide these telephone numbers by November 6; otherwise, the Court shall add this failure to the jury instruction on defendants' discovery conduct.

While defendants did provide some scripts and instructions, they seem incomplete, astoundingly without any discussion of fees, for example.  Obviously, if RLG is not a legitimate law firm with the personnel and resources to prosecute a case of this type against a large bank, the falsity of the advertisements become apparent.  Similarly, RLG has resisted for months providing information about its business, including the vendors which provided marketing and internet services.  Those vendors (and related documents) could provide valuable insight into the nature of RLG's operations.  Amazingly, RLG vigorously resisted providing the criteria for targeting specific Maryland customers of First Mariner as possible victims of First Mariner wrongdoing. If RLG figuratively took names "out of a phone book," it undermines the case. Obviously, if RLG did not have a

basis to file a bona fide lawsuit on behalf of the specific recipients to which the advertisements were mailed, First Mariner's false advertising claim is strengthened and RLG's absolute privilege defense, vitiated. The defendants finally relented to some extent providing a better description of its criteria for mailing.

These discovery failures and tactics, plaintiff argues severely prejudiced its prosecution of its case. The Court agrees that plaintiff was prejudiced by defendants' misconduct. That prejudice, coupled especially by defendants' stunning culpability, compels imposition of a stiff sanction, not only to level the litigation playing field and punish the defendants, but to also send a clear signal that such behavior is wholly unacceptable in our courts.

Two types of prejudice result from discovery abuses. The first is procedural prejudice resulting from delay. Evasiveness, delay and obfuscation may hinder the opposing party's ability to develop their case. Bethesda Softworks LLC v. Interplay Entm't Corp., 2011 U.S. Dist. LEXIS 44397 (D. Md. Apr. 25, 2011)("Indefinite delay, disruption of deadlines, and the continuation of discovery can amount to prejudice"). Here, for an example, First Mariner postponed the 30(b)(6) deposition First Mariner planned for March, as it wanted, quite understandably, to have its written discovery – especially

documents before the deposition.  This discovery "dispute"
diverted First Mariner from the prosecution of the case, to
unnecessary side issues, and obviously "bought time" for the
defendants.

Courts have recognized that this piecemeal, less than
complete and slow production takes a toll and inflicts a
disadvantage on the requesting party.  <u>Aerodyne Systems
Engineering, Ltd v. Heritage International Bank</u>, 115 F.R.D. 281,
288 (D. Md. 1987). Seasoned practitioners and judges recognize
this "death by a thousand cuts" approach to legitimate discovery
requests.  It is wearing, counter-productive, wholly
unacceptable and sanctionable.

Prejudice thus is not simply the evidentiary disadvantage
that lack of discovery imposes in proving or defending specific
claims.  The Court believes that a sanction can be imposed
beyond attorney's fees even if the requested discovery was
largely, ultimately provided, as here for the many of the
discovery requests.  Greater specificity on selection of targets
of mailed advertisements has now been wrung out of defendants.
Defendants, finally but belatedly, provided lists of actual
recipients of mailed advertisements, though unassociated with
particular mailings.  These failures (and the arduous attempts
to obtain the key discovery) have indeed prejudiced First
Mariner in its litigation, in several ways and requires

imposition of significant sanctions.  While an attorney's fee

award can address the "out of pocket" cost of unnecessary

motions' practice to obtain discovery, there is delay and

disruption that is real, if not wholly quantifiable, impeding

the efficient, orderly and prompt resolution of a case.

The second type of prejudice is substantive.  If a party

refuses to produce requested evidence despite a court order, its

opponent is obviously hindered in its ability to prosecute a

claim or present evidence at trial.

While substantive prejudice to the movant is an important

aspect of a Rule 37 analysis, it is generally not required for

stronger sanctions, such as preclusion orders.  Courts have

ordered preclusion, even in the absence of prejudice, in cases

where the non-movant is particularly culpable.  The Court of

Appeals for the District of Columbia has upheld an order

precluding evidence where defendant, "in a remarkable pattern of

delay and obfuscation," had "resisted the discovery of specified

financial records, computer disks and other information."

Jankins v. TDC Management Corp., 21 F.3d 436, 444 (D.C. Cir.

1994).  Although the trial was ultimately delayed, minimizing

prejudice to plaintiff, the Court found that the order barring

defendant from introducing evidence at trial was appropriate

given defendants' "willful misconduct, and the purpose of

sanctions as a penalty and to deter misconduct by others." Id.

Similarly, in Wachtel v. Health Net, Inc., 239 F.R.D. 81, 106 (D.N.J. 2006), the Court excluded 20,000 pages of late-produced documents from trial. While acknowledging that the aggrieved party could potentially remedy any prejudice before the trial date, the Court found that in cases involving a "persistent pattern of delay and obfuscation" a preclusion sanction was proper. Id.

The prejudice in this case is more procedural than substantive, with the important exceptions of the denial of information regarding Marketing Smart and the lack of the identification of past employees. Defendants, after significant delay, ultimately produced much of the other discovery requested by plaintiff or swore that it did not exist. While defendants' untimely production was certainly less than complete, plaintiff has not been entirely denied the means with which to present its case. On the other hand, defendants are clearly culpable. Defendants have sidestepped plaintiff's requests, ignored orders of the Court, and delayed proceedings. At every opportunity, defendants have obscured rather than clarified in their answers to plaintiff. This pattern of misconduct is certainly deserving of sanction – indeed demanding of sanction.

However, the question before the Court is whether, in the absence of significant substantive prejudice, plaintiff has met the high bar necessary for sanctions as strong as it has

requested. Essentially, defendants' position is "no harm, no foul." They seem to argue that they have now provided the discovery requested in December 2012, and aside from paying some attorney's fees, the defendants should not be subject to any punishment or disadvantage in the defense of this case in any way. Given that the defendants eventually produced much of the requested discovery or swore that it did not exist (though sometimes with questionable credibility), the sanctions that plaintiff seeks, including entry of an adverse inference, loss of the affirmative defense of "absolute privilege" and a bar from asserting the truthfulness of the advertisements may seem too severe. On the other hand, as long as a party can "fix" its discovery deficiencies without real penalty, there would seem to be no meaningful deterrence to this type of conduct.

As stated earlier, Rule 37 sanctions properly have remedial and punitive ends. Here, the remedial end of Rule 37 is served in part by the award of attorney's fees reimbursing plaintiff for its attorney's fees incurred unnecessarily to obtain legitimate discovery. However, the award of attorney's fees does not fully put Humpty Dumpty back together again – as defendants' discovery failures have clearly delayed and complicated the prosecution of the case and perhaps more importantly, represent a bold mockery of the rules of fair play embodied in the Federal Rules of Civil Procedure. The comments

of the late, distinguished Judge Murnaghan upholding entry of a default judgment for similar discovery misconduct are apt.

> "Even though the defendants may have made efforts to comply, the attempts were lastditch and only offered when it became crystal clear that they were going to lose the case unless they did something. Entrance of default judgment [is] an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future. To find otherwise would be to send the opposite message that the Court may be pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling."

Mut. Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc., 872 F.2d 88, 94 (4th Cir. 1989). Accordingly, in recognition of defendants' belated production of much of the requested discovery, the Court has not imposed the severest of available sanctions – default judgment or preclusion of evidence nor even the lesser sanctions requested by plaintiff, in all instances. However, the Court has concluded that the only effective remedy – and deterrent – here is to adversely affect the defendants' position in the litigation.

The Court shall discuss what this conclusion means in terms of the specific relief plaintiff seeks.

### Request for an Order Prohibiting Defendants from Asserting the Defense of "Absolute Privilege."

The parties agree that Maryland Law recognizes an absolute privilege for defamatory matter published by an attorney during,

or prior to, a judicial proceeding in which he is engaged. Arundel Corp. v. Green, 75 Md. App. 77, 82-83 (1998). Defendants contend that the statements in the advertisements are accordingly absolutely privileged.

First Mariner argues that "[d]efendants' willful failures to comply with the Court's discovery orders are intended to deprive First Mariner the opportunity to contest defendants' Absolute Privilege defense."  The Court agrees, particularly as it relates to the statements made prior to institution of a lawsuit to which privilege applies "only when the communication has some relation to a proceeding that is contemplated in good faith under serious consideration."  Id. at 84.  If defendants deprive First Mariner of the ability to investigate and test the facts of RLG's operations, (is it a legitimate law firm or a money-making scam), it cannot challenge, for example, defendants' bald assertion that the advertisements had some "relation to a proceeding that is contemplated in good faith under serious consideration."  Defendants' discovery misconduct – delay, obfuscation and ultimately marginally satisfactory responses to most, but not all, discovery requests, was aimed at hampering First Mariner from contesting RLG's absolute privilege defense.

While this is certainly culpable behavior, it is also important to note that defendants eventually provided much,

though not all, of the information plaintiff needs to challenge the absolute privilege.  In light of this production, the Court finds that striking the privilege defense entirely is too severe a sanction.  On the other hand, the Court also finds that a mere imposition fees is an insufficient penalty for behavior clearly calculated to deprive plaintiff of the facts of the RLG operations.

The Court finds that the most appropriate sanction in this unique case is an instruction to the jury informing them of this misconduct, as set out in the accompanying order.  This middle-ground solution follows that adopted by the court in Network Computing Services Corp. v. Cisco Systems, Inc. 223 F.R.D. 392, 400-401 (D.S.C. 2004).  There, plaintiff delayed production of material documents for several months, despite several motions to compel and court orders.  Id. at 396-399.  Although there was no great prejudice as a result of the delay, the district court found that in light of plaintiff's repeated dilatory tactics a monetary sanction was insufficient.  Id. at 399.  Instead, the court opted to inform the jury of the misconduct.  Id.  The court noted that this "moderate approach" was "especially appropriate in those rare cases where there has been clear and sanctionable conduct by one of the parties."  Id. at 400.

Like in Network, this is a rare case of clear and repeated sanctionable conduct on the part of defendants.  Without the

continual efforts of plaintiff to pry relevant information from defendants, they would have not have received sufficient information to contest defendant's privilege defense.  The most appropriate sanction for defendants' conduct is to bring it to light in front of the jury, whose members may make consider it along with all other evidence at trial.

### Request for an Order Entering an Adverse Inference Against Defendants that they are not Legitimately Offering Legal Services, but Rather Operating that the FTC has called a "Mortgage Reduction Scam."

First Mariner argues that "[d]efendants . . . have made it impossible to develop facts proving that [they] are operating on a scam rather than offering bona fide legal services," refusing to identify its employees and information on Marketing Smart and vendors and website consultant.  Defendants' discovery failures, especially the lack of complete information on past employees and information on Marketing Smart, significantly handcuff First Mariner in its proof of RLG as a scam operation.  Employees, vendors or other consultants would ordinarily provide invaluable "third party" information.  Defendants' failure to provide a valid address for Marketing Smart to allow a subpoena even though defendants acknowledge contact with Marketing Smart as recently as June, is a major impediment for plaintiff in its case.  Communications between Marketing Smart and RLG, including drafts regarding the advertisements, might be highly probative.

It is not enough that First Mariner will have the opportunity to depose Messrs. Broderick and Berger as 30(b)(6) representatives. Counsel must be able to come at key factual issues "sideways," not be limited to wresting testimony from only the defendants themselves.

In considering an appropriate sanction for this behavior, the analysis in Stanphill v. Health Care Serv. Corp., a case which bears some similarity to the facts at hand, is instructive.  2008 U.S. Dist. LEXIS 43878 (W.D. Okla. June 3, 2008).  There, defendants' production came more than a year after plaintiff's request, but before the trial date.  Id. at *22-23.  Noting that the failure limited plaintiff's ability to effectively conduct depositions, the court determined that sanctions beyond fees were warranted.  The court declined, however, to grant plaintiff's request for "an order designating its version of the documents as true and requiring the jury to draw inferences favorable to [plaintiff] as a result of the delay."  Id. at *24.  Noting that the "proposed sanctions would turn the Court into the fact-finder with substitution of its judgment for that of the jury," the court found that a mandatory inference was improper.  Id. at *23.  Instead, the court ordered a "permissible inference," instructing the jury "that it can draw inferences adverse to the Defendant based on its failure to timely supplement its document production."  Id.

Plaintiff's adverse inference request goes to the very heart of plaintiff's case. While this sanction may have been appropriate if material evidence was destroyed or <u>entirely</u> withheld, here defendants have produced sufficient information to allow the plaintiff to engage in further investigation and discovery by deposition and to allow the jury to reach their own conclusion on this central issue. As such, as in <u>Stanphill</u>, the Court declines to grant the requested sanction wholesale.

Defendants' conduct is, however, worthy of consideration by the jury. Defendants' pattern of delay and intransigence during discovery is relevant evidence. The jury should therefore consider defendants' late and incomplete production, in conjunction with all other evidence presented, in drawing its conclusions, and is instructed that it may draw a negative inference from the failure to produce information on Marketing Smart and past employees.

## Request for an Order Prohibiting Defendants from Asserting the Defamation Statements at Issue are True.

First Mariner also claims that defendants' "willful discovery failures have prevented [it] from exploring the context of the advertisements," and ask that the Court prohibit defendants from asserting that their statements in the advertisements are true. (ECF No. 142-1, 9).

The Court agrees that defendants' discovery failures have
hindered First Mariner's ability to fully disprove the veracity
of the statements when made.  For example, the scripts for
intake might shed light on defendants' "inten[tion] to file a
claim against . . . First Mariner Bank aimed at improper lender
actions" or contradict the advertisement's assertion that there
is an "investigation of potentially fraudulent mortgage note."
(Compare ECF No. 1-2, 1).  Or the scripts might reveal the
nature of the investigation.  Past employees, again, may provide
useful information.

It is not enough to say that First Mariner can depose the
defendants on these subjects.  Seasoned practitioners know that
documents are essential in directing and identifying areas of
inquiry and frankly keeping deponents "honest."  However, until
it can be determined that there are transcripts and that there
are additional scripts, for example, which are being withheld,
the Court has determined that this requested sanction is too
severe.  If more information is elicited, further supporting the
inference that defendants are withholding transcripts or scripts
which are of high probative value, the Court would consider
entry of an adverse inference or a rebuttable presumption that
the defamatory statements are not true.  At this point, the
Court finds the lack of significant instructions and the
haphazardness of the scripts, notably without mention of fees,

to be highly suspect and suggestive of the withholding of damaging documents.  The Court also finds the equivocation and confusion over the existence of transcripts suspect.  It is very common – indeed almost standard – for a recording to be made of such intake or customer calls.  But the Court will not sanction defendants on these suspicions.  However, at this point the Court shall impose a penalty insofar as the lack of any identification of any past employees and the failure to provide viable information about Marketing Smart to allow at a minimum, service of a subpoena duces tecum.

While the Court declines to grant the requested sanction, it again finds, in line with the reasoning supra, that defendants' discovery conduct is relevant evidence for the jury. As such, while defendants' actions do not justify instructing the jury that there is an adverse inference, as earlier indicated the jury shall be instructed that they may make such an inference, in the absence of information on past employees and Marketing Smart, that their testimony would be adverse to the defendants.

### Request for an Order Prohibiting Defendants from Offering Evidence Rebutting Plaintiff's Costs for Corrective Advertising.

Since the defendants have identified a per piece cost of the mailed advertisements, this gives the plaintiff the basis for corrective advertising costs.

However, because defendants have failed to identify and
itemize the advertising cost information for the mailed
advertisements, the Court agrees that defendants should be
restricted in their presentation of evidence on the point.
However, an order prohibiting defendants from offering <u>any</u>
evidence rebutting plaintiff's costs for corrective advertising
is too severe.  But, the defendants may not present any evidence
on the itemized costs, as was requested but never provided.
They may only present the basic per piece cost that they
provided in discovery. Compare <u>PBM Products, Inc. v. Mead
Johnson & Co</u>., 174 F. Supp. 2d 417, 420-1 (E.D. Va 2001).

A separate order shall be filed to accompany this
Memorandum Opinion.

Date: __10/24/13__                        _____/s/_____
                                          Susan K. Gauvey
                                          United States Magistrate Judge